# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 22-207V

| | |
|---|---|
| LARRY TOOTHMAN,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: April 19, 2024 |

*Leah VaSahnja Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.

*Camille Jordan Webster*, U.S. Department of Justice, Washington, DC, for respondent.

### FINDINGS OF FACT[1]

On February 24, 2022, Larry Toothman filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine he received in his right shoulder on August 17, 2021. Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons discussed below, I find the flu vaccine alleged as causal was more likely than not administered in Petitioner's right shoulder.

## I. Relevant Procedural History

Approximately eleven months after the claim's initiation, Petitioner submitted his proof of vaccination (depicting a hand-written, encircled "LA" as the site of vaccination), plus medical records and an affidavit. ECF No. 12. He filed a statement of completion the same day. ECF No. 14. On May 15, 2023, Petitioner amended his Petition to include more factual details. ECF No. 16. This case was then activated and assigned to SPU. ECF No. 18.

In November 2023, Respondent filed a status report stating his opinion that this case was not appropriate for compensation. ECF No. 23. Respondent subsequently filed his Rule 4(c) report on January 22, 2024. ECF No. 25. Respondent argues that Petitioner's vaccination record "clearly documents that he received the flu vaccine in his left arm, and not his right arm, the site where his subsequent treatment took place." *Id.* at 7 (citing Ex. 1 at 2). Respondent otherwise "acknowledges that [P]etitioner sought treatment twenty-three days later and a physical exam revealed evidence of decreased right shoulder [range of motion ("ROM")] and internal rotation." *Id.* at 7-8. Thus, Respondent requests that the Court issue a fact ruling resolving the issue of situs. *Id.* at 8.

## II. Issue

At issue is whether Petitioner received the vaccination alleged as causal in his right arm. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination).

## III. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV. Finding of Fact

The following finding of fact is based on a complete review of the record, including the petition, all medical records, affidavits, and additional evidence filed. Specifically, I highlight the following:

- Ex. 5 ¶ 1, Petitioner's affidavit, wherein he refers generally to "the shoulder" or as "it" – he rarely describes symptomology specific to the right shoulder, nor does he mention in which arm the vaccine was administered. For instance, Petitioner states that "when [the nurse] first put the needle in, [Petitioner] remember[ed] thinking that hurt. [He] couldn't move [his] arm and had a bunch of pain in the whole arm." *Id.* Petitioner also describes limitations with activities and stated he is "more left-handed than right-handed anymore." *Id.* ¶ 2. As an example, Petitioner attests that when pumping gas, "[t]he right arm isn't strong enough to turn [the knob] one click. There just isn't a lot [he] can do with it." *Id.* ¶ 3.

- Ex. 2 at 8, a record of Petitioner's September 9, 2021 visit (23 days post vaccination) with a primary care physician ("PCP") to establish care and address "R arm pain." Petitioner reported he "got [the] flu vaccine in this arm on 8/17/21 and has had ain [sic] in [the] arm ever since." *Id.* Petitioner also noted decreased ROM "to [the] right shoulder, weakness to [right upper extremity] and [numbness/tingling] to the first three fingers on [the] right hand." *Id.* A physical examination confirmed Petitioner's complaints. *Id.* at 9. Petitioner was assessed with acute pain of the right shoulder and he was prescribed prednisone. *Id.* Petitioner was also referred to an orthopedic surgeon with the reason listed as "decreased ROM; injection from flu shot in wrong area[,] pain for over a month now with radiation down arm." *Id.*

- Ex. 2 at 5, a record from Petitioner's follow-up appointment with his PCP on September 20, 2021, noting "right arm pain after flu shot [i]nsertion[,] weeks later . . . still having pain [after] it was inserted in incorrect location." Petitioner reported "pain to right shoulder [-] aching and then sharp shooting at times." *Id.* Petitioner was ordered to undergo imaging of the right shoulder. *Id.* at 6.

- Ex. 2 at 20, an x-ray of Petitioner's right shoulder showing minimal arthropathy of the acromioclavicular joint, with minimal degenerative type changes.

- Ex. 2 at 18, an October 4, 2021 note from a visit to an orthopedic surgeon, during which Petitioner reported "a lot of problems with his right shoulder" since his flu vaccine. Following a physical examination, Petitioner was assessed with an "[i]njection site reaction" and "[i]nternal impingement of [the] right shoulder." *Id.* at 19. Petitioner received a steroid injection in his right shoulder and was referred to physical therapy ("PT"). *Id.*

- Ex. 3 at 182, a record of Petitioner's October 6, 2021 initial PT evaluation noting Petitioner presented with "R shoulder pain secondary to onset after flu vaccine given on 8/17/21." Upon a physical examination revealing diminished ROM and strength in the right shoulder, additional PT was recommended to address Petitioner's right shoulder symptoms. Petitioner subsequently attended five additional PT sessions for his right shoulder through November 2021. *See id.* at 128-226.

- Ex. 2 at 16, a record from Petitioner's orthopedic follow-up for "right shoulder impingement" on November 17, 2021. A physical examination showed that Petitioner's "shoulder motion is not fluid on the right side." *Id.* Petitioner was assessed with internal impingement of the right shoulder and a nontraumatic complete tear of the right rotator cuff. *Id.* An MRI of the right shoulder was recommended. *Id.* at 17.

- Ex. 2 at 22, a November 29, 2021 MRI of Petitioner's right shoulder. The reason for the MRI was listed as "[p]ain with limited [ROM] and right hand numbness post flu shot in right upper top shoulder area."

- Ex. 2 at 14, a record from Petitioner's December 8, 2021 follow-up with his orthopedic surgeon noting that his right shoulder pain had increased since his last visit. The orthopedic surgeon's assessment of Petitioner's right shoulder remained unchanged following a physical examination. *Id.*

- Ex. 3 at 101, a record from Petitioner's second initial PT evaluation on January 5, 2022, stating "pain in R shoulder" that "began following [a] flu vaccine in August 2021." Additional PT was suggested to help manage Petitioner's right shoulder complaints. *Id.* at 104. Petitioner completed seven additional sessions through February 2022, with the focus on his right shoulder. *Id.* at 37-76.

- Ex. 6 at 1, an October 3, 2022 orthopedic follow-up note showing Petitioner received a second steroid shot in his right shoulder due to ongoing pain in said shoulder. *Id.* at 1-2.

5

The above evidence preponderantly supports the conclusion that Petitioner's August 17, 2021 flu vaccine was likely administered in his right shoulder, as alleged. The record of Petitioner's September 9, 2021 PCP visit for right shoulder pain present ever since receiving a flu shot in his right arm (Ex. 2 at 8), is particularly persuasive. This record is from only approximately 23 days post vaccination and is the most contemporaneous record other than the vaccine administration record itself. And as the above-referenced medical records further establish, when seeking medical treatment on every occasion thereafter, Petitioner consistently reported right shoulder pain attributable to his flu vaccination.

It is true that the vaccine administration record *itself* memorializes the site of the administration of Petitioner's flu vaccine as the left arm – with a handwritten circle of the notation "LA." Ex. 1 at 2. While I routinely afford more weight to a handwritten vaccination record,[3] based upon my experience resolving SPU SIRVA cases and comparable matters, it is also not unusual for the information regarding situs of vaccination set forth in this kind of document to be incorrect.[4] In many instances, the information regarding situs has been recorded prior to vaccination and is not subsequently corrected, even if the vaccine is then administered in the opposing arm.[5] Thus, although such records are unquestionably the first-generated documents bearing on the issue of site, and merit some weight as a result, they are not per se reliable simply because they come first. In fact, I have previously determined that the very nature of vaccination record creation provides some basis for *not* accepting them as the evidence worthy of highest probative weight. *See,* e.g., *Rizvi v. Sec'y of Health & Hum. Servs.*, No. 21-881V, 2022 WL 2284311, at *4 (Fed. Cl. Spec. Mstr. May 13, 2022).

The vaccine administration record at issue here is a handwritten entry on an otherwise haphazardly-completed form. *See* Ex. 1 at 2 (containing entries listed

---

[3] *Rizvi v. Sec'y of Health & Hum. Servs.*, No. 21-881V, 2022 WL 2284311, at *4 (Fed. Cl. Spec. Mstr. May 13, 2022); *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559V, 2020 WL 1870268, at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2020).

[4] *See,* e.g., *Arnold v. Sec'y of Health & Hum. Servs.,* No. 20-1038V 2021 WL 2908519, at *4 (Fed. CL. Spec. Mstr. June 9, 2021); *Syed v. Sec'y of Health & Hum. Servs.,* No. 19-1364V, 2021 WL 2229829, at *4-5 (Fed. Cl. Spec. Mstr. Apr. 28, 2021); *Ruddy v. Sec'y of Health & Hum. Servs.*, No 19-1998V, 2021 WL 1291777, at *5 (Fed. Cl. Spec. Mstr. Mar. 5, 2021); *Desai v. Sec'y of Health & Hum. Servs.*, No 14-0811V, 2020 WL 4919777, at *14 (Fed. Cl. Spec. Mstr. July 30, 2020); *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559V, 2020 WL 1870268, at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2020); *Stoliker v. Sec'y of Health & Hum. Servs.*, No. 17-0990V, 2018 WL 6718629, at *4 (Fed. Cl. Spec. Mstr. Nov. 9, 2018).

[5] In a recent ruling by another special master, the pharmacist who had administered the relevant vaccination actually testified that she inputs "left deltoid" into the computer system as a matter of course, without confirming the actual site of vaccination, based upon the assumption that most vaccinees are right-handed. *Mezzacapo v. Sec'y of Health & Hum. Servs.*, No. 18-1977V, 2021 WL 1940435, at *4 (Fed. Cl. Spec. Mstr. Apr. 19, 2021).

diagonally and not in the allotted spaces). It is the only evidence in this case that contradicts Petitioner's assertions regarding situs and supports a finding of left arm situs. When weighed against Petitioner's clear, consistent, and close-in-time reports of right shoulder pain following his receipt of a flu vaccine in that arm, his diagnostic testing, and his exclusive treatment for *right* shoulder symptoms, it does not defeat a finding that Petitioner received his August 17, 2021 flu vaccine in his right arm, as alleged. To rule otherwise, the overall record would need to contain more instances in which the counter situs was suggested or supported.

### V.	Scheduling Order

**Respondent shall file, by no later than <u>Friday, May 10, 2024</u>**, a status report concerning how he intends to proceed, including, if appropriate, whether he would like to file an amended Rule 4(c) report.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master